UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

WILFREDO TORRES

                         Plaintiff,

        v.

NANCY A. BERRYHILL,[1] Commissioner of
Social Security,

                         Defendant.
_____

**DECISION
and
ORDER**

**17-CV-00323-LGF
(consent)**

APPEARANCES:         LAW OFFICES OF KENNETH R. HILLER
                                Attorneys for Plaintiff
                                JUSTIN GOLDSTEIN, of Counsel
                                6000 Bailey Avenue
                                Suite 1A
                                Amherst, New York 14226

                                JAMES P. KENNEDY, JR.
                                ACTING UNITED STATES ATTORNEY
                                Attorney for Defendant
                                JUNE BYUN
                                Assistant United States Attorney, of Counsel
                                Federal Centre
                                138 Delaware Avenue
                                Buffalo, New York 14202, and

                                STEPHEN P. CONTE
                                Regional Chief Counsel
                                United States Social Security Administration
                                Office of the General Counsel, of Counsel
                                26 Federal Plaza
                                Room 3904
                                New York, New York 10278

---

[1] Nancy A. Berryhill became Acting Commissioner of the Social Security Administration on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn Colvin as the defendant in this suit. No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

## JURISDICTION

On June 19, 2018, the parties consented, pursuant to 28 U.S.C. § 636(c) and a Standing Order (Dkt. No. 13), to proceed before the undersigned. (Dkt. No. 13-1). The court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on motions for judgment on the pleadings, filed on August 28, 2017, by Plaintiff (Dkt. No. 8), and on September 27, 2017, by Defendant (Dkt. No. 11).

## BACKGROUND and FACTS

Plaintiff Wilfredo Torres ("Plaintiff"), brings this action pursuant to the Social Security Act ("the Act"), seeking review of the Acting Commissioner of Social Security ("the Commissioner" or "Defendant") decision denying his application for disability benefits for Supplemental Security Income ("SSI") benefits under Title II of the Act ("disability benefits"). Plaintiff, born on April 8, 1963 (R. 49), has a nine-year limited education (R. 49), and alleges that he became disabled on May 10, 2011, when he stopped working as a result of degenerative disc disease, depression, anxiety, panic attacks, high blood pressure, and high cholesterol. (R. 180).

Plaintiff's application for disability benefits was initially denied by Defendant on March 27, 2014 (R. 73), and, pursuant to Plaintiff's request, a hearing was held before Administrative Law Judge Elizabeth Koennecke ("Judge Koennecke" or "the ALJ"), on May 25, 2016, in Syracuse, New York, where Plaintiff, represented by Peter Syracuse, Esq. ("Syracuse") appeared and testified. (R. 44-59). In repose to a request by the ALJ, Vocational Expert Karen A. Simone ("VE Simone" or "the VE"), provided answers to interrogatories on June 13, 2016. (R.249-50). The ALJ's decision denying Plaintiff's

claim was rendered on August 5, 2016.  (R. 27-37).  Plaintiff requested review by the Appeals Council, and on February 16, 2017, the ALJ's decision became Defendant's final decision when the Appeals Council denied Plaintiff's request for review.  (R. 1-4).  This action followed on April 14, 2017, with Plaintiff alleging that the ALJ erred by failing to find him disabled.  (Dkt. No. 1).

On August 28, 2017, Plaintiff filed a motion for judgment on the pleadings ("Plaintiff's motion"), accompanied by a memorandum of law (Dkt. No. 8) ("Plaintiff's Memorandum").  Defendant filed, on September 27, 2017, Defendant's motion for judgment on the pleadings ("Defendant's motion"), accompanied by a memorandum of law (Dkt. No. 11) ("Defendant's Memorandum").  On November 17, 2017, Plaintiff filed a reply to Defendant's memorandum ("Plaintiff's Reply").  (Dkt. No. 12). Oral argument was deemed unnecessary.

## DISCUSSION

A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or the decision is based on legal error.  *See* 42 U.S.C. 405(g); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003).  "Substantial evidence" means 'such relevant evidence as a reasonable mind might accept as adequate.'" *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000).

### A. <u>Standard and Scope of Judicial Review</u>

The standard of review for courts reviewing administrative findings regarding disability benefits, 42 U.S.C. §§ 401-34 and 1381-85, is whether the administrative law

judge's findings are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence requires enough evidence that a reasonable person would "accept as adequate to support a conclusion." *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938). When evaluating a claim, the Commissioner must consider "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability (testified to by the claimant and others), and . . . educational background, age and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)). If the opinion of the treating physician is supported by medically acceptable techniques and results from frequent examinations, and the opinion supports the administrative record, the treating physician's opinion will be given controlling weight. *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993); 20 C.F.R. § 404.1527(d); 20 C.F.R. § 416.927(d). The Commissioner's final determination will be affirmed, absent legal error, if it is supported by substantial evidence. *Dumas,* 712 F.2d at 1550; 42 U.S.C. §§ 405(g) and 1383(c)(3). "Congress has instructed . . . that the factual findings of the Secretary,[2] if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability insurance benefits. 20 C.F.R. §§ 404.1520 and 416.920. *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v.*

---

[2] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

*Schweiker*, 675 F.2d 464 (2d Cir. 1982). The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which benefits are claimed. 20 C.F.R. §§ 404.1520(b) and 416.920(b). If the claimant is engaged in such activity the inquiry ceases and the claimant is not eligible for disability benefits. *Id.* The next step is to determine whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities as defined in the applicable regulations. 20 C.F.R. §§ 404.1520(c) and 416.920(c). Absent an impairment, the applicant is not eligible for disability benefits. *Id.* Third, if there is an impairment and the impairment, or an equivalent, is listed in Appendix 1 of the regulations and meets the duration requirement, the individual is deemed disabled, regardless of the applicant's age, education or work experience, 20 C.F.R. §§ 404.1520(d) and 416.920(d), as, in such a case, there is a presumption the applicant with such an impairment is unable to perform substantial gainful activity.[3] 42 U.S.C. §§ 423(d)(1)(A) and 1382(c)(a)(3)(A); 20 C.F.R. §§ 404.1520 and 416.920. *See also Cosme v. Bowen*, 1986 WL 12118, at * 2 (S.D.N.Y. 1986); *Clemente v. Bowen*, 646 F.Supp. 1265, 1270 (S.D.N.Y. 1986).

However, as a fourth step, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" and the demands of any past work. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the applicant can still perform work he or she has done in the past, the applicant will be denied disability benefits. *Id.* Finally, if the applicant is unable to perform any past

---

[3] The applicant must meet the duration requirement which mandates that the impairment must last or be expected to last for at least a twelve-month period. 20 C.F.R. §§ 404.1509 and 416.909.

work, the Commissioner will consider the individual's "residual functional capacity," age, education and past work experience in order to determine whether the applicant can perform any alternative employment. 20 C.F.R. §§ 404.1520(f), 416.920(f). *See also Berry,* 675 F.2d at 467 (where impairment(s) are not among those listed, claimant must show that he is without "the residual functional capacity to perform [her] past work"). If the Commissioner finds that the applicant cannot perform any other work, the applicant is considered disabled and eligible for disability benefits. 20 C.F.R. §§ 404.1520(g), 416.920(g). The applicant bears the burden of proof as to the first four steps, while the Commissioner bears the burden of proof on the final step relating to other employment. *Berry,* 675 F.2d at 467.

In reviewing the administrative finding, the court must follow the five-step analysis and 20 C.F.R. § 416.935(a) ("§ 416.935(a)"), to determine if there was substantial evidence on which the Commissioner based the decision. 20 C.F.R. § 416.935(a); *Richardson*, 402 U.S. at 410.

**B.** <u>**Substantial Gainful Activity**</u>

The first inquiry is whether the applicant engaged in substantial gainful activity. "Substantial gainful activity" is defined as "work that involves doing significant and productive physical or mental duties" done for pay or profit. 20 C.F.R. § 404.1510(a)(b). Substantial work activity includes work activity that is done on a part-time basis even if it includes less responsibility or pay than work previously performed. 20 C.F.R. § 404.1572(a). Earnings may also determine engagement in substantial gainful activity. 20 C.F.R. § 404.1574. In this case, the ALJ concluded that Plaintiff did not engage in substantial gainful activity from Plaintiff's alleged onset date of April 8, 2013, until the

6

ALJ's disability determination on August 10, 2016. (R. 30). Plaintiff does not contest this finding.

C.       **Severe Physical or Mental Impairment**

The second step of the analysis requires a determination whether the disability claimant had a severe medically determinable physical or mental impairment that meets the duration requirement in 20 C.F.R. § 404.1509 ("§ 404.1509"), and significantly limits the claimant's ability to do "basic work activities." If no severe impairment is found, the claimant is deemed not disabled and the inquiry ends. 20 C.F.R. § 404.1420(a)(4)(ii).

The Act defines "basic work activities" as "abilities and aptitudes necessary to do most jobs," and includes physical functions like walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b) ("§ 404.1521(b)"), 416.921(b). The step two analysis may do nothing more than screen out *de minimus* claims, *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995), and a finding of a non-severe impairment should be made only where the medical evidence establishes only a slight abnormality which would have no more than a minimal effect on the claimant's ability to work. *Rosario v. Apfel,* 1999 WL 294727, at *5 (E.D.N.Y. March 19, 1999) (quoting Social Security Ruling ("SSR") 85-28, 1985 WL 56856).

In this case, the ALJ determined that Plaintiff suffered from the severe impairments of lumbar stenosis and obesity, and that Plaintiff's hypertension, high

7

cholesterol and diabetes mellitus impairments were not severe. (R. 30). Plaintiff contends that the ALJ's step two findings are erroneous, as the ALJ failed to include Plaintiff's mental impairments in step two of the ALJ's disability analysis and to correct such error by including findings on Plaintiff's mental impairments throughout the remaining steps of the ALJ's disability determination. Plaintiff's Memorandum at 16-20. Defendant maintains that substantial evidence supports the ALJ's finding that Plaintiff's mental impairments resulted in only mild limitations to Plaintiff's concentration, persistence and pace, social functioning, activities of daily living, and that Plaintiff experienced no repeated episodes of decompensation such that Plaintiff's mental impairment was not severe under step two of the disability analysis. Defendant's Memorandum at 17. Defendant further contends that should the court find any error in the ALJ's step two findings, such error should be deemed harmless, as the ALJ included Plaintiff's other severe impairments throughout the remaining steps of the ALJ's disability analysis. Defendant's Memorandum at 13-19. Defendant's motion on this issue is without merit.

Evidence supporting that Plaintiff's depression is a severe impairment under step two includes Plaintiff's visit on February 25, 2015, to Matthew Bowen ("Mr. Bowen"), a psycho-therapist with Strong Memorial Behavioral Health ("Strong"), in Rochester, New York, where, upon completing a mental status examination on Plaintiff, Mr. Bowen noted that Plaintiff's symptoms of depression and anxiety resulted in a restricted, anxious, and depressed mood and affect, and impaired Plaintiff's remote memory. (R. 356). Mr. Bowen diagnosed Plaintiff with post-traumatic stress disorder ("PTSD") related to a car accident in 2008 (R. 356), and noted that Plaintiff reported spending

8

most of his days lying in bed looking up at the ceiling. (R. 356-57). On March 25, 2015, Mr. Bowen noted that Plaintiff's anxiety had worsened, that Plaintiff's emotions were increasingly dysregulated (poorly modulated emotions), and diagnosed Plaintiff with irritable, anxious, angry and depressed mood and affect. (R. 358). Mr. Bowen continued to evaluate Plaintiff with anxious, depressed, irritable and restricted affect and mood on April 7, 2016 (R. 360), April 21, 2015 (R. 362), and May 5, 2015 (R. 368).

On June 15, 2015, Karen Hospers ("Ms. Hospers"), a psychotherapist with Strong, completed an intake assessment on Plaintiff and diagnosed Plaintiff with Axis I[4] PTSD, major depressive disorder, recurrent, moderate, deferred diagnosis on Axis II, Axis III hypertension, herniated discs, high cholesterol, kidney cysts, borderline diabetes, Axis IV death of family member, economic stress, history of trauma and housing problems, and assessed Plaintiff with an Axis V global assessment of functioning ("GAF")[5] score of 55. (R. 375-76). Based on the foregoing, substantial evidence supports that Plaintiff's depression results in a significant limitation to Plaintiff's ability to do "basic work activities" and is therefore a severe impairment under step two of the disability review analysis. Plaintiff's motion on this issue is GRANTED. Although remand to afford the ALJ an opportunity to include Plaintiff's depression in step two and

---

[4] [4] The DSM-IV multiaxial scale is used to assess an individual's mental and physical condition on five axes, each of which refers to a different class of information: Axis I, clinical disorders; Axis II, personality disorders; Axis III, general medical conditions; Axis IV, psychosocial and environmental stressors, and Axis V, global assessment of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders-IV-TR* ("DSM-IV"), at 27 (4th ed. 2000).

[5] The Global Assessment of Functioning (GAF) scale is used to report an individual's overall level of functioning. http:// *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th Edition, Text Revision) ("DSM-IV-TR"). A GAF of 51-60 [indicates] moderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational or school functioning (*e.g.*, few friends, conflicts with peers or co-workers). DSM-IV-TR at 32.

during the remaining steps of the disability review process is appropriate, no such remand is necessary in the instant case, as the court finds, Discussion, *infra*, at 18-19, that remand for calculation of benefits is required during step five of the review process.

D. **Listing of Impairments**

At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal the criteria for disability under Appendix 1 of 20 C.F.R. Pt. 404, Subpt. P ("The Listing of Impairments"), specifically 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 1.04 ("§ 1.04") (Disorders of the Spine). Plaintiff does not contest the ALJ's findings under step three of the disability review process.

E. **Residual functional capacity**

Once an ALJ finds a disability claimant does not have a severe medically determinable physical or mental impairment, 20 C.F.R. § § 404.1520(a)(4)(ii), that significantly limits the claimant's physical and mental ability to do work activities, *Berry*, 675 F.2d at 467, and the claimant is not able, based solely on medical evidence, to meet the criteria established for an impairment listed under Appendix 1, the burden shifts to the Commissioner to show that despite the claimant's severe impairment, the claimant has the residual functional capacity to perform alternative work, 20 C.F.R. § 404.1520(a)(4)(iv) and prove that substantial gainful work exists that the claimant is able to perform in light of the claimant's physical capabilities, age, education, experience, and training. *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980). To make such a determination, the Commissioner must first show that the applicant's impairment or impairments are such that they nevertheless permit certain basic work activities essential for other employment opportunities. *Decker v. Harris*, 647 F.2d 291, 294 (2d Cir. 1981).

The Second Circuit requires that "all complaints . . . must be considered together in determining . . . work capacity." *DeLeon v. Secretary of Health and Human Services,* 734 F.2d 930, 937 (2d Cir. 1984). Once an ALJ finds a disability claimant does not have a severe medically determinable physical or mental impairment, 20 C.F.R. § 404.1520(a)(4)(ii), that significantly limits the claimant's physical and mental ability to do work activities, *Berry*, 675 F.2d at 467, and the claimant is not able, based solely on medical evidence, to meet the criteria established for an impairment listed under Appendix 1, the burden shifts to the Commissioner to show that despite the claimant's severe impairment, the claimant has the residual functional capacity to perform past work, 20 C.F.R. § § 404.1520(a)(4)(iv), and to prove substantial gainful work exists that the claimant is able to perform in light of the claimant's physical capabilities, age, education, experience, and training. *Parker*, 626 F.2d 225 at 231. It is improper to determine a claimant's residual work capacity based solely upon an evaluation of the severity of the claimant's individual complaints. G*old v. Secretary of Health and Human Services*, 463 F.2d 38, 42 (2d Cir. 1972). To make such a determination, the Commissioner must first show that the applicant's impairment or impairments are such that they permit certain basic work activities essential for other employment opportunities. *Decker v. Harris*, 647 F.2d 291, 294 (2d Cir. 1981). Specifically, the Commissioner must demonstrate by substantial evidence the applicant's "residual functional capacity" with regard to the applicant's strength and "exertional capabilities." *Id.* An individual's exertional capability refers to the performance of "sedentary," "light," "medium," "heavy," and "very heavy" work. *Decker*, 647 F.2d at 294.

Specifically, the Commissioner must demonstrate by substantial evidence the applicant's "residual

functional capacity" with regard to the applicant's strength and "exertional capabilities." *Id.* at 294.

An individual's exertional capability refers to the performance of "sedentary," "light," "medium," "heavy," and "very heavy" work. *Decker*, 647 F.2d at 294. In addition, the Commissioner must establish that the claimant's skills are transferrable to the new employment if the claimant was employed in a "semi-skilled" or "skilled" job. *Id.* at 294. This element is particularly important in determining the second prong of the test, whether suitable employment exists in the national economy. *Id.* at 296.

In this case, the ALJ found that Plaintiff had the residual functional capacity to perform light work with limitations to occasionally lift, carry, push and pull up to 20 pounds, frequently lift carry pull and push up to 10 pounds, sit and stand for four hours, walk for one hour, alternate positions occasionally while staying on task, continuously reach, handle, finger, and feel, and occasionally perform all postural activities. (R. 32, 36).

Plaintiff contends that the ALJ's residual functional capacity assessment is without support of substantial evidence. In particular, Plaintiff alleges that the ALJ's residual functional capacity assessment of Plaintiff is erroneous as the ALJ failed to adopt the complete findings of Rita Figueroa, M.D. ("Dr. Figueroa") (finding Plaintiff was able to sit, stand, and walk for 15 minutes at a time, and required a cane), particularize Plaintiff's need to alternate positions and use a cane, and provide reasons for rejecting the findings of Physician Assistant Rachel Barone ("P.A. Barone"), that Plaintiff was very limited in Plaintiff's ability to walk, stand, lift, and carry and would be absent from work two days each month. (R. 35). Plaintiff further contends that the ALJ's flawed residual functional capacity assessment of Plaintiff resulted in an improper finding that

Plaintiff was capable of light work and incomplete interrogatories posed to the VE. Plaintiff's Memorandum at 20-25.

Defendant maintains that substantial evidence supports the ALJ's residual functional capacity assessment of Plaintiff as the ALJ balanced Plaintiff's testimony that Plaintiff was unable to sit or stand for "too long" with a lack of medical evidence to support Dr. Figueroa's findings that Plaintiff was able to sit, stand, and walk for 15 minutes, and that Plaintiff's work would require an accommodation to alternate positions every 15 to 20 minutes. Defendant's Memorandum at 21-22. Defendant further maintains that the ALJ properly evaluated Plaintiff's need to use a cane and the findings of P.A. Barone. Defendant's Memorandum at 23-25. Defendant's motion on this issue is without merit.

The ALJ's residual functional capacity assessment of Plaintiff included limitations to Plaintiff's ability to occasionally lift, carry, push and pull up to 20 pounds, frequently lift carry, pull and push up to 10 pounds, sit and stand for four hours, walk for one hour, occasionally alternate positions while staying on task, and continuously reach, handle, finger, feel, and perform all postural activities. (R. 32, 36). Significantly, however, the ALJ's findings that Plaintiff is able to sit and stand for four hours, occasionally walk for one hour, and alternate positions while remaining on task (R. 32), are without support of substantial evidence in the record. In particular, on March 17, 2015, Ben Laplante, D.O. ("Dr. Laplante"), an osteopath with Unity Health Center ("Unity") in Rochester, New York, completed a physical examination on Plaintiff and noted that Plaintiff's lumbar pain was aggravated by changing positions, lifting, lying/resting, sitting, standing, and walking. (R. 489).

On September 1, 2015, a magnetic resonance imaging ("MRI") scan of Plaintiff's lumbar spine revealed multi-level foraminal narrowing[6] of Plaintiff's L4-L5[7] and L5-S1 disc spaces.

On February 22, 2016, Dr. Figueroa noted that Plaintiff alternated between sitting and standing every five minutes during the examination. (R. 323). Dr. Figueroa evaluated Plaintiff with the ability to sit, stand, and walk for 15 minutes at a time without interruption for a total of four hours in an eight-hour workday, noted that it was medically necessary for Plaintiff to use a cane, and that Plaintiff was able to walk a distance of 100 feet without using his cane. (R. 327).

On March 3, 2016, P.A. Barone evaluated Plaintiff with functional limitations that include a very limited ability to walk and stand, moderate limitations to sit, push, pull, and bend, and opined that Plaintiff's work activities should include limitations to avoid prolonged standing, sitting, and walking, and the ability to alternate sitting and standing, with no bending or twisting. (R. 488).

On May 8, 2016, P.A. Barone reported that Plaintiff was able to sit for 30 minutes before needing to stand, stand for 15 minutes before needing to walk and that Plaintiff's pain significantly impaired Plaintiff's ability to function on a daily basis and would result in Plaintiff being absent from work two days each month (R. 499), in further support of Dr. Figueroa's findings that Plaintiff was able to sit, stand and walk for 15 minutes at a time for a total of four hours in an eight-hour workday and that Plaintiff would need to alternate positions between sitting, standing and walking, limitations that result, at most,

---

[6] Foraminal narrowing is a spinal condition that results in pain from nerve root compression.
[7] L4 and L5 refer to numbered segments on an individual's lumbar spine.

in Plaintiff's inability to perform light work, which, by definition involves:

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category if it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of the activities. If someone can do light work, we determine that he or she can also do sedentary work, <u>unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time</u>.

20 C.F.R. § 404.1567(b). (underlining added).

Plaintiff's limitation to sit for only 15 minutes at a time and alternate periods of sitting and standing, Discussion, *supra*, at 13-14, further erode Plaintiff's ability to perform light work and results in an ability to perform only sedentary work, which, by definition, involves:

> [l]ifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking[8] and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

The ALJ's finding that Plaintiff is able to perform light work is thus without support of substantial evidence in the record. Plaintiff's motion on this issue is GRANTED. For purposes of evaluating Plaintiff's ability to work under step five of the disability review analysis, the court therefore adopts Plaintiff's ability to perform sedentary work throughout the remaining steps of the disability review process.

---

[8] *See* Social Security Ruling ("SSR") 83-10, Titles II and XVI: Determining Capability to do other Work – The Medical-Vocational Rules of Appendix 2. "[A]t the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *5 (S.S.A. 1983).

15

F.  **Suitable Alternative Employment in the National Economy**

In instances where nonexertional limitations diminish a claimant's ability to perform the full range of "light" work, the ALJ should require the Secretary to solicit testimony from a vocational expert regarding the availability of jobs in the national and regional economies suitable for employment of an individual with exertional and nonexertional limitations similar in nature to the claimant's. *Bapp*, 802 F.2d 606 at 501. Following a vocational expert's testimony, a plaintiff must be afforded an opportunity to rebut the expert's evidence. *Nelson v. Bowen*, 882 F.2d 45, 49 (2d Cir. 1989). The Act requires the ALJ utilize the same residual functional capacity assessment used to determine if a claimant can perform past relevant work when assessing a claimant's ability to perform other work. 20 C.F.R. § 404.1560(c)(2). "Hypothetical questions asked of the vocational expert must 'set out all of the claimant's impairments.'" *Lewis v. Apfel*, 236 F.3d 503, 517 (9th Cir. 2001) (citing *Gamer v. Secretary of Health and Human Services*, 815 F.2d 1275, 1279 (9th Cir. 1987)).

Upon determining that a disability claimant's severe medically determinable impairment prevents a claimant's performance of vocationally relevant past relevant work, a determination is made as to the claimant's ability to adjust to other work. *See* 20 C.F.R. § 404.1560(c)(1). The Medical Vocational Guidelines (hereinafter "the Grids"),[9] set for under 20 C.F.R. Pt. 404, Subpt. P. App. 2 Tables 1-3 ("App. 2 Tables 1-

---

[9] The Grids, or Medical-Vocational Guidelines, divide work into sedentary, light, medium, heavy, and very heavy categories, based on the extent of a claimant's ability to sit, stand, walk, lift, carry, push and pull. 20 C.F.R. § 404, Subpt. P, App. 2. Each category has its own Grid which takes into account the claimant's age, education, and work experience. Based on these factors, the Grids indicate whether a claimant can engage in any other substantial gainful work which exists in the national economy and/or whether the claimant is disabled.

3"), are used to determine whether a claimant is disabled using factors that include the claimant's residual functional capacity, the vocational factors of age, education, and the skill level and transferability of the claimant's previous work experience. *See* 20 C.F.R. Pt. 404, Supt. P., App. 2 § 200(a) ("App. 2 § 200(a)"). Where applicable, the Grids may be used to meet the Secretary's burden of proof concerning the availability of alternative employment and supersede the requirement of vocational expert testimony regarding specific jobs a claimant may be able to perform in the regional or national economy. *Heckler v. Campbell*, 461 U.S. 458, 462 (1983).

In this case, the ALJ's interrogatories to VE Simone were based on the ALJ's flawed residual functional capacity assessment of Plaintiff (*i.e.,* no limitation to Plaintiff's ability to sit, stand and walk for 15 minutes at a time and need to use a cane), and resulting in the VE's erroneous finding that Plaintiff was able to perform light work. (R. 249). Plaintiff, at most, is capable of performing sedentary work. *See* Discussion, *supra*, at 14-15. The court uses the Grids to provide the framework for determining whether Plaintiff is disabled using criteria that includes Plaintiff's age, education, ability to perform sedentary work, and transferability of work experience. *See* Table 1 – Residual Functional Capacity: Maximum Sustained Work Capability Limited To Sedentary Work As A Result of Severe Medically Determinable Impairment(s) ("Table 1"). Plaintiff, age 53 at the time of the ALJ's decision (R. 49), is considered a person closely approaching advanced age. 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200 (g). Plaintiff testified that he completed ninth grade in high school (R. 49), and is therefore defined as an individual with a limited or less education. 20 C.F.R. § 404.1564(b)(3). The ALJ found that Plaintiff had no past relevant work (R. 36), indicating that Plaintiff is

considered an individual with unskilled or no work experience and no transferable skills. 20 C.F.R. § 404.1565(a). Incorporating the aforementioned criteria into the Grids, 20 C.F.R. Pt. 404, Subpt. P, App. 2 Rule 201.09, indicates that an individual like Plaintiff closely approaching advanced age, with limited or less education, unskilled or no transferable skills, and capable of performing only sedentary work is deemed disabled. Plaintiff is therefore disabled.

Additionally, as argued by Plaintiff, Plaintiff's Memorandum at 21-22, Plaintiff's need to alternate positions completely erodes Plaintiff's ability to perform light work rendering Plaintiff incapable of light work and disabled. *See* Social Security Ruling ("SSR") 83-12, Titles II and XVI: Capability to do Other Work – The Medical-Vocational Rules as a Framework for Evaluating Exertional Limitations within a Range of Work or Between Ranges of Work 1983 WL 31253, at *4 (individuals who may be able to sit for a time but must get up and stand or walk for a while before returning to sitting are not functionally capable of doing either the prolonged sitting contemplated by sedentary work or the prolonged standing or walking contemplated for light work).

Plaintiff is disabled under step five of the disability review analysis. The court therefore declines to discuss Plaintiff's remaining arguments regarding Plaintiff's credibility, Plaintiff's Memorandum at 27-30, and the ALJ's requirement to recontact Diego Fallon, M.D. ("Dr. Fallon") is unnecessary. Plaintiff's Memorandum at 27.

## G. Remand

In this case, remand for calculation of benefits is warranted because further administrative proceedings or a new hearing would serve no useful purpose. *Parker*, 626 F.2d at 235 (where no useful purpose would be served by remand for further

development of record, remand for calculation of benefits is appropriate); *Martinez v. Commissioner of Social Security*, 262 F.Supp.2d 40, 49 (W.D.N.Y. 2003) ("Where the existing record contains persuasive proof of disability and a remand for further evidentiary proceedings would serve no further purpose, a remand for calculation of benefits is appropriate."). The matter is therefore remanded for calculation of benefits.

Mindful of the often painfully slow process by which disability determinations are made, the Second Circuit instructs that some evaluation of relative hardship to a claimant of further delay should be considered, *Butts v. Barnhart*, 388 F.3d 377, 387 (2d Cir. 2004), district courts may therefore "when appropriate set a time limit for action by the administrative tribunal, and this is often done." *Zambrano v. Califano,* 651 F.2d 842, 844 (2d Cir. 1981) (citing cases). *See also Michaels v. Colvin*, 621 Fed.Appx. 35, 41 (2d Cir. Aug. 14, 2015) (directing upon remand for further fact-finding at step five that given eight years had elapsed since the plaintiff filed for disability benefits, the further administrative proceedings were to be completed within 120 days, with the Commissioner's final decision to be rendered within 60 days of any appeal by the plaintiff from the ALJ's decision, and citing *Butts v. Barnhart*, 388 F.3d 377, 387 (2d Cir. 2004) (imposing time limit on remand where "the past delay is of such magnitude – years – that a time limit is imperative") *as amended on reh'g in part*, 416 F.3d 101, 106 (2d Cir. 2005) (providing that if deadlines for further administrative proceedings at the fifth step, on which the Commissioner bears the burden of proof, are not met, "a calculation of benefits owed [plaintiff] must be made immediately)).

Plaintiff filed his application for disability on December 3, 2013 (R. 151), testified at an administrative hearing on May 25, 2016 (R. 43-59), received a final decision of not

disabled on August 5, 2016 (R. 27-37), and a denial by the Appeals Council on February 16, 2017. (R. 1-4). As it has been nearly five years since Plaintiff first filed his application for disability, further delay for remand is a hardship this Plaintiff should not bear. The Commissioner's calculation of benefits should therefore be completed <u>within 120 days</u> of this Decision and Order. *See Dambrowski v. Astrue,* 590 F.Supp.2d 579, 588 (S.D.N.Y.) (imposing a time limit of 120 days for subsequent proceedings when five years had passed since Plaintiff filed his application).

## **CONCLUSION**

Based on the foregoing, Plaintiff's motion (Doc. No. 8) is GRANTED; Defendant's motion (Doc. No. 11) is DENIED, and the case is REMANDED to the Commissioner solely for calculation of benefits.

SO ORDERED.

/s/ *Leslie G. Foschio*
_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED: October 25, 2018
           Buffalo, New York